IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Aaron Wayne Pellum, | ) | C/A No. 0:12-2468-JFA-PJG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Bernard McKie, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

The petitioner, Aaron Wayne Pellum, proceeding *pro se*, brought this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the respondent's motion for summary judgment. (ECF No. 22.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Pellum was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the respondent's motion. (ECF No. 24.) Pellum filed a response in opposition. (ECF No. 38.) Having carefully considered the parties' submissions and the applicable law, the court concludes that the respondent's motion should be granted and Pellum's petition denied.

## BACKGROUND

Pellum was indicted in October 2001 in Colleton County for murder (2001-GS-15-616) and first degree burglary (2001-GS-15-617). (App. at 555-558, ECF No. 23-12 at 57-60.) Pellum was represented by Sean Thornton, Esquire, and on October 28, 2002 was tried by a jury and found guilty as charged. (App. at 543, ECF No. 23-12 at 45.) The circuit court sentenced Pellum to life

imprisonment for murder and thirty years' imprisonment for first degree burglary, both sentences to run concurrently.  (App. at 553, ECF No. 23-12 at 55.)

Pellum timely appealed and was represented by Joseph L. Savitz, Esquire, Deputy Chief Attorney for the South Carolina Office of Appellate Defense, who filed an Anders[1] brief on Pellum's behalf that raised the following issue:

> The judge erred by allowing the State to utilize Pellum's post-arrest silence as evidence of his guilt.

(ECF No. 23-1 at 4.)  On May 3, 2004, the South Carolina Court of Appeals dismissed Pellum's appeal.  (State v. Pellum, Op. No 2004-UP-288 (S.C. Ct. App. May 3, 2004), ECF No. 23-2.) The remittitur was issued on June 4, 2004.  (ECF No. 23-3.)

Pellum filed a application for post-conviction relief ("PCR") on April 26, 2005 in which he raised numerous allegations of ineffective assistance of counsel.  Pellum also alleged that "he is being held unlawfully in that his federal constitutional rights, including but not limited to, rights under 4th, 5th, 6th, 8th and 14th Amendments have been violated" and that he "was denied due process of law when the court recessed in the middle of the proceedings for Judicial Continuing Legal Education, thus interrupting the process and flow of trial."  (Pellum v. State of South Carolina, 05-CP-15-375, App. at 559-64, ECF No. 23-12 at 61-66.)  On April 13, 2009, the PCR court held an evidentiary hearing at which Pellum appeared and testified and was represented by H. Stanley Feldman, Esquire.  At the hearing, Pellum was granted leave to include a claim of conflict of interest.

---

[1] Anders v. California, 386 U.S. 738 (1967).  Anders requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited.  Anders, 386 U.S. at 744.



(App. at 579, ECF No. 23-13 at 81.)  By order filed May 27, 2009, the PCR court denied and

dismissed Pellum's PCR application with prejudice.  (App. at 742-58, ECF No. 23-13 at 83-99.)

Pellum filed a Rule 59 motion to alter and amend on July 5, 2007, which the PCR court denied on

August 7, 2009.  (App. at 760-75, ECF No. 23-13 at 101-16; App. at 779-80, ECF No. 23-13 at 120-

21.)

Pellum, represented by J. Brandt Rucker, Esquire, filed a petition for a writ of certiorari on

January 31, 2011 that raised the following issues:

> 1.     Did the circuit court err in holding that Petitioner's trial counsel was not
>        ineffective in failing to inform Petitioner of an actual conflict of interest and
>        in failing to withdraw because of this actual conflict in interest?
>
> 2.     Did the circuit court err in holding that counsel was not ineffective in failing
>        to subject the prosecution's case to meaningful adversarial testing?

(ECF No. 23-4.)  The State filed a return.  (ECF No. 23-5.)  On March 21, 2012, the South Carolina

Supreme Court issued an letter order denying Pellum's petition for a writ of certiorari.  (ECF No.

23-6.)  The remittitur was issued April 10, 2012.  (ECF No. 23-7.)  Pellum filed the instant Petition

for a writ of habeas corpus on August 23, 2012.[2]  (ECF No. 1.)

### FEDERAL HABEAS ISSUE

Pellum raises the following ground in his federal Petition for a writ of habeas corpus:

**Ground One:**  Petitioner's trial attorney failed to protect Petitioner's Fourth, Fifth,
and Sixth Amendment rights in the following way:  Trial Counsel failed to subject
the prosecution's case to any meaningful adversarial testing, he failed to object to the
prosecution's use of Petitioner's post arrest silence, trial counsel failed to adequately
investigate the case and prepare for trial, trial counsel failed to move to suppress
evidence, trial counsel failed to object to the amendment of the indictment for murder

---

[2] See Houston v. Lack, 487 U.S. 266 (1988) (stating that a prisoner's pleading is filed at the
moment of delivery to prison authorities for forwarding to the district court).



after the jury was sworn and to the adequacy of such indictment, trial counsel failed to object to the introduction of DNA evidence because of issues related to the chain of custody, trial counsel failed to challen[]ge the unconstitutional seizure of blood from Petitioner's body, trial counsel stipulated to the introduction of 120 photographs which were unduly prejudicial, trial counsel failed to secure the fingerprints of four individuals found in the decedent's car, trial counsel failed to properly prepare Petitioner for trial, trial counsel failed to preserve appealab[]le issues, trial counsel failed to perform adequately at the Jackson v. Denno hearings regarding alleged statements of the petitioner, trial counsel failed to object to the recess of the trial, trial counsel failed to create a record of a private meeting with the att[or]neys, judge, and a juror in the judge's chamber, he failed to inform Petitioner of his actual conflict of interest and trial counsel failed to properly address issues regarding harmful trial publicity regarding a newspaper article that was available to the jurors.

(ECF No. 1 at 5.)

## DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the




entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## B.    Statute of Limitations

The respondent argues that Pellum's Petition is untimely under the one-year statutory deadline set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(1). The one-year time period runs from the latest of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Because Pellum filed a direct appeal, his conviction

became final on June 4, 2004, the date the South Carolina Court of Appeals entered the remittitur.[3] See Rules 203(b)(2), 221, & 242, SCACR. Accordingly, the limitations period began to run on June 5, 2004 and expired June 6, 2005,[4] unless the period was at any time tolled for any properly filed state PCR application. 28 U.S.C. § 2244(d)(2); see also Hernandez v. Caldwell, 225 F.3d 435, 438-39 (4th Cir. 2000) (applying the anniversary date method in calculating the one-year limitations period in § 2244 and concluding that "the actual count on the limitations period began on April 25, 1996, and ended on April 24, 1997, excluding any time tolled").

Pellum filed his state PCR application on April 26, 2005. At that point, 325 days of non-tolled time had accrued since the period of limitations began to run. The period of limitations was tolled during the pendency of the PCR action until April 10, 2012, when the South Carolina Supreme Court issued the remittitur from its order denying Pellum's petition for a writ of certiorari. At this

---

[3] Because Pellum did not seek certiorari from the South Carolina Supreme Court, he is not entitled to an additional tolled time period of 90 days in which to seek certiorari review from the United States Supreme Court. Hammond v. Hagan, C/A No. 4:07-1081-JFA, 2008 WL 2922860, at *3 (D.S.C. July 24, 2008); see also 28 U.S.C. § 1257 ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari . . . ."); U.S. Sup. Ct. R. 10(b) (stating that certiorari is considered where "state court of last resort" has decided an important federal question); U.S. Sup. Ct. R. 13 (stating that the time period for a petition for a writ of certiorari is 90 days from the decision or judgment of a state court of last resort). The court observes that on February 19, 2009 the South Carolina Supreme Court stated that it "will no longer entertain petitions for writs of certiorari where the Court of Appeals has dismissed an appeal after conducting an Anders review." State v. Lyles, 673 S.E.2d 811, 813 (S.C. 2009). However, Lyles had not been issued at the time of Pellum's direct appeal.

[4] June 4, 2005 was a Saturday; therefore Pellum had until the following Monday, June 6, 2005 to file his federal habeas petition. See Fed. R. Civ. P. 6(a)(3); see also Rules Governing § 2254 Cases, Rule 11, 28 U.S.C. foll. § 2254 ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.").



time, Pellum had 40 days of statutory time remaining which means that Pellum had until May 21, 2012[5] to file a timely federal habeas corpus petition.

Pellum's federal Petition was filed on August 22, 2012—approximately three months after the expiration of the statute of limitations.

## C.    Equitable Tolling

In his opposition memorandum to the respondent's motion, Pellum argues that the statute of limitations should be equitably tolled.  (Petr.'s Resp. Opp'n Summ. J., ECF No. 38 at 6-7; Petr.'s Supp. Mem. Opp'n Summ. J., ECF No. 38-1.; Pellum Decl., ECF No. 38-2.)  Specifically, he argues that while the South Carolina Supreme Court issued its remittitur denying his petition for a writ of certiorari on April 10, 2012, he did not receive notification of this decision until August 21, 2012. In support of his argument, he attaches five letters from his attorney, who apparently made repeated attempts to inform Pellum of the South Carolina Supreme Court's decision.  (Ex. A, ECF No. 38-3 at 1-6.)  Pellum declares that only the last of these letters dated August 17, 2012 was ever delivered to him by the Kirkland mail room, and that upon receiving this letter on August 21, 2012, he promptly filled out the form for his federal petition and attempted to mail it the next day.  (Pellum Decl., ECF No. 38-2 at 1.)  Additionally, review of Pellum's attorney's August 17, 2012 letter indicates that at least one of the attorney's previous letters to Pellum had recently been returned from Kirkland despite the fact that it does not appear that Pellum had been transferred to a different facility during this time.  (See ECF No. 38-3 at 6.)

---

[5] May 20, 2012 was a Sunday; therefore Pellum had until the following Monday, May 21, 2012 to file his federal habeas petition.  See Fed. R. Civ. P. 6(a)(3); see also Rules Governing § 2254 Cases, Rule 11, 28 U.S.C. foll. § 2254 ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.").



To avoid application of § 2244(d) regarding the timeliness of the instant federal habeas Petition, Pellum must show that the one-year limitations period should be equitably tolled under applicable federal law. See Holland v. Florida, 130 S. Ct. 2549 (2010) (concluding that § 2244(d) is subject to the principles of equitable tolling); Harris v. Hutchinson, 209 F.3d 325 (4th Cir. 2000) (same). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) (citation omitted); see also Holland, 130 S. Ct. at 2562. Equitable tolling is available only in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Rouse v. Lee, 339 F.3d 238 (4th Cir. 2003) (internal quotation marks and citation omitted); see also United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004). Thus, to be entitled to equitable tolling, an otherwise time-barred petitioner must present: "(1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." Rouse, 339 F.3d at 246.

On the basis of this record, it appears that Pellum has presented sufficient evidence to establish grounds for equitable tolling and that he has been pursuing his rights diligently. See Pace, 544 U.S. at 418; see also Holland, 130 S. Ct. at 2562; cf. Pace, 544 U.S. at 419 (denying equitable tolling to a habeas petitioner who waited years to file his PCR petition and months after his PCR trial to seek relief in federal court); Harris, 209 F.3d at 330 ("Under long-established principles, petitioner's lack of diligence precludes equity's operation."). However, even if equitable tolling rescues Pellum's untimely Petition, his claims fail on the merits for the reasons stated below.

D.    **Merits**

1.    **Habeas Corpus Standard of Review**

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),
claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas
corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly
established federal law as decided by the Supreme Court of the United States," or the decision "was
based on an unreasonable determination of the facts in light of the evidence presented in the state
court proceeding."  28 U.S.C. § 2254(d)(1), (2).  When reviewing a state court's application of
federal law, "a federal habeas court may not issue the writ simply because that court concludes in
its independent judgment that the relevant state-court decision applied clearly established federal law
erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams v. Taylor,
529 U.S. 362, 410 (2000); see also Harrington v. Richter, 131 S. Ct. 770, 785 (2011); Humphries
v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004).  Moreover,
state court factual determinations are presumed to be correct and the petitioner has the burden of
rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long
as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington,
131 S. Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Under the AEDPA,
a state court's decision "must be granted a deference and latitude that are not in operation" when the
case is being considered on direct review.  Id. at 785.  Moreover, review of a state court decision
under the AEDPA standard does not require an opinion from the state court explaining its reasoning.
See id. at 784 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the



state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. Id. Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. Id. at 786. "If this standard is difficult to meet, that is because it was meant to be." Id. Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

### 2. Exhaustion Requirements

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), abrogated on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir. 2011); see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies."). To exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted). Thus, a federal court may consider only those issues which



have been properly presented to the state appellate courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d 437; see also Coleman v. Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

> ### 3.    Procedural Bar

As quoted above, Ground One in Pellum's Petition alleges that trial counsel was ineffective. To the extent that Pellum intended each of trial counsel's alleged deficiencies to serve as independent claims, the court finds that most of these claims would be procedurally barred from federal habeas review as they were not properly presented to the state appellate courts. See Coleman, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); Picard v. Connor, 404 U.S. 270, 275-76 (1971) (stating that to exhaust state remedies, a petitioner's "federal claim must be fairly presented to the state courts" to give the state courts "the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding"). Moreover, these claims would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules if Pellum attempted to raise them now. See Lawrence, 517 F.3d at 714; Longworth, 377 F.3d 437; see also Coleman, 501 U.S. 722. The only specific issues that Pellum presented to the state appellate courts—that are also arguably contained in his Petition—are

PJG

that trial counsel was ineffective in failing to inform Pellum of an actual conflict of interest and that trial counsel was ineffective in failing to subject the prosecution's case to meaningful adversarial testing.  (<u>Compare</u> Pet. for Writ Cert., ECF No. 23-4 <u>with</u> Pet., ECF No. 1 at 5.)  Moreover, as argued by the respondent, while several of the alleged deficiencies by trial counsel are listed as support for Pellum's two claims, they were not properly presented to the state appellate courts as independent issues.[6]  <u>See</u>, <u>e.g.</u>, Rule 243(e), SCACR (discussing the content of a petition for writ of certiorari to review PCR actions, including the questions presented for review and that "[t]he argument on each question shall include citation of authority and specific reference to pertinent portions of the lower court record"); <u>Longworth</u>, 377 F.3d at 448 (stating to exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim," *i.e.*, "the ground must be presented face-up and squarely") (internal quotation marks and citation omitted).

Therefore, Pellum's other issues are procedurally barred unless he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice."  <u>Coleman</u>, 501 U.S. at 750; <u>see also</u> <u>Picard v. Connor</u>, 404 U.S. 270, 275-76 (1971) (stating that to exhaust state remedies, a petitioner's "federal claim must be fairly presented to the state courts" to give the state

---

[6] Even if the court concluded that listing these allegations as support for a claim was sufficient to have fairly presented these allegations to the state appellate court, the court has considered them in addressing Pellum's allegation that trial counsel failed to subject the prosecution's case to meaningful adversarial testing, and for the reasons discussed below, Pellum is not entitled to federal habeas corpus relief.  These allegations include: that trial counsel failed to object to the prosecution's use of Petitioner's post arrest silence; failed to object to the recess of the trial; and failed to properly address issues regarding harmful trial publicity regarding a newspaper article that was available to the jurors.



courts "the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding"). Pellum appears to argue that if each allegation is not considered, a fundamental miscarriage of justice will occur. A petitioner may establish a fundamental miscarriage of justice by showing that he is actually innocent of the crime for which he was convicted. However, to establish "actual innocence," a petitioner must produce new reliable evidence that was not presented at trial to establish his factual innocence. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999); see also Schlup v. Delo, 513 U.S. 298, 327-28 (1995) (stating that to demonstrate "actual innocence," a petitioner must present "new reliable evidence . . . that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt"). The court finds that Pellum's conclusory and speculative argument fails to meet this standard and that Pellum has failed to demonstrate that based on any new reliable evidence it is more likely than not that no reasonable juror would have found him guilty. See Schlup, 513 U.S. at 327-29.

### 4.     Ineffective Assistance of Trial Counsel

As stated above, Pellum's Petition contains two properly exhausted claims that trial counsel was ineffective. Specifically, Pellum argues that trial counsel was ineffective in failing to (1) inform Pellum of an actual conflict of interest and (2) subject the prosecution's case to meaningful adversarial testing.

### a.     Controlling Law Regarding Allegations of Ineffective Assistance of Counsel and Conflict of Interest

A defendant has a constitutional right to the effective assistance of counsel. To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. <u>Id.</u> at 687; <u>see also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 391 (2000) (stating that "the <u>Strickland</u> test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims").

To satisfy the first prong of <u>Strickland</u>, a petitioner must show that trial counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution. With regard to the second prong of <u>Strickland</u>, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. Prejudice may be presumed when (1) a defendant is completely denied counsel at a critical stage of his trial, (2) counsel "entirely fails to subject the prosecution's case to a meaningful adversarial testing," or (3) "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." <u>United States v. Cronic</u>, 466 U.S. 648, 659 (1984).

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d)." <u>Harrington</u>, 131 S. Ct. 770, 788 (2010). The Court observed that while " '[s]urmounting <u>Strickland</u>'s



high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Id. (quoting Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010)). The Court instructed that the standards created under Strickland and § 2254(d) are both " 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

With regard to conflicts of interest, "[a] criminal defendant's Sixth Amendment right to effective assistance of counsel includes a right to counsel unhindered by conflicts of interest." Mickens v. Taylor, 240 F.3d 348, 355 (4th Cir. 2001) (en banc). Ineffective assistance of counsel based on a conflict of interest "presents a special case" with specific standards. Id. "To establish ineffective assistance of counsel on conflict of interest grounds, a petitioner must establish that (1) his attorney labored under 'an actual conflict of interest' that (2) 'adversely affected his lawyer's performance.' " Id. (citing Cuyler v. Sullivan, 446 U.S. 335, 348 (1980)). "Adverse effect cannot be presumed from the mere existence of a conflict of interest." Rubin v. Gee, 292 F.3d 396, 401 (4th Cir. 2002). But if both prongs are satisfied, then prejudice is presumed. Mickens, 240 F.3d at 355.

To show an actual conflict of interest, a petitioner " 'must show that [his] interests diverge[d] [from his attorney's] with respect to a material factual or legal issue or to a course of action.' " Stephens v. Branker, 570 F.3d 198, 209 (4th Cir. 2009) (alterations in original). To satisfy the second prong, the petitioner must demonstrate that "the actual conflict of interest compromised his attorney's representation." Id.



Although the Supreme Court has held that a decision containing a reasoned explanation is not required from the state court, in the case at bar this court has the benefit of the PCR court's written opinion, certiorari review of which was denied by the South Carolina Supreme Court. See, e.g., Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991) (indicating that when a state appellate court affirms a lower court decision without reasoning, the court may look through the later, unreasoned, summary disposition and focus on the last reasoned decision of the state court). Having reviewed the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons that follow that the state court did not unreasonably misapply the Strickland test in determining that no Sixth Amendment violation occurred.

        **b.**        **PCR Court Testimony and Findings**

**Conflict of Interest.** At the PCR hearing, Pellum alleged that a conflict of interest existed because (1) at the time of his trial, trial counsel was a part-time county attorney and (2) shortly after his trial, trial counsel accepted a position with the solicitor's office. At the PCR hearing, trial counsel testified about the alleged "conflict of interest." Trial counsel stated that when he received Pellum's criminal case, he was the Chief Public Defender of Colleton County and several months later, he became the Colleton County Attorney on a part-time basis. (App. at 587, 599, ECF No. 23-12 at 89, 101.) However, after he left the Public Defender's Office, trial counsel stated that he retained several of his outstanding cases to ease the burden on the office, including Pellum's case. Trial counsel stated that although he discussed the potential conflict of interest with every client,[7]

---

[7] Trial counsel affirmatively stated that he did not believe an actual conflict of interest existed. (See App. at 608-09, ECF No. 23-12 at 110-11.)



he did not put anything in writing.  (App. at 604, ECF No.23-12 at 106.)  Specifically, trial counsel

testified that he basically informed Pellum of the following:

> I'm going to be leaving the Public Defender's Office; I'm going to be going out on
> my own now; I am also going to be County Attorney.
> I don't represent the Sheriff on any criminal matters.  I am not with the
> Solicitor's Office.
> I do on occasion have to deal with him in a civil context.  Do you want me
> to continue in this case or not?

(App. at 606, ECF No. 23-12 at 108; <u>see also</u> App. at 712-13, ECF No. 23-13 at 53-54.)  Trial

counsel testified that Pellum indicated that he had no problem with the potential conflict, and that

in fact, Pellum tried to hire trial counsel to pursue his direct appeal.  Trial counsel stated that he

declined as he did not perform appellate work.  (App. at 604, ECF No. 23-12 at 106.)  With regard

to his employment with the Solicitor's Office, trial counsel stated that he did not assume that

position until after the completion of Pellum's trial.  (App. at 697, ECF No. 23-13 at 38.)

Pellum testified that he was unaware that trial counsel was the attorney for Colleton County

government, and that if he had been aware, he would have objected.  (App. at 717, ECF No. 23-13

at 58.)  Pellum stated that he felt that he was prejudiced because trial counsel could not have

represented him to his fullest ability while representing the county.  (App. at 718-19, ECF No. 23-13

at 59-60.)

In rejecting Pellum's claims of ineffective assistance of trial counsel, the PCR court found

that Pellum's testimony was not credible, and that trial counsel's testimony was credible.  (App. at

751, ECF No. 23-13 at 92.)  Moreover, the PCR court found the following:

> Here, Applicant has failed to establish that counsel's part-time employment with the
> county adversely affected his representation.  Counsel testified that he did not discuss
> any criminal matters with law enforcement.  Although Applicant did not sign a
> written waiver, he was aware of counsel's new position and he never indicated that



he was uncomfortable with counsel's representation.  Counsel also informed Judge Buckner[, the trial judge,] that he was a Colleton County Attorney, and Judge Buckner did not have a problem with it.  This Court finds that no conflict of interest actually materialized.

(App. at 757, ECF No. 23-13 at 98.)

**Meaningful Adversarial Testing.**  Pellum argues generally that trial counsel failed to subject the prosecution's case to meaningful adversarial testing.  In support of this argument, Pellum appears to rely on several alleged deficiencies by trial counsel.   The allegations that were included both in his petition for a writ of certiorari and in his federal habeas Petition include that trial counsel purportedly:

1.    Failed to object to the unusual recess in the trial immediately after Pellum's testimony and to inquire into whether the trial judge had an actual Judicial Continuing Legal Education program;

2.    Did not properly question jurors to determine if they had read and been influenced by the subsequent newspaper article; and

3.    Failed to object to the State questioning Petitioner regarding his post-arrest silence.

With regard to these allegations, trial counsel testified that the trial judge recessed Pellum's trial on Thursday, after the third day of trial, to enable the judge to attend a judicial CLE.  (App. at 583-88, 704, ECF No. 23-12 at 85-90 & ECF No. 23-13 at 45 .)  Trial counsel stated that Pellum was not prejudiced by this recess and there was no reason to object to it.  Before the trial reconvened on Friday, a newspaper article was published about the trial.  Trial counsel testified that prior to the recess the trial judge advised the jurors not to look at the newspaper.  Further, trial counsel stated that on Friday, the trial judge asked the jurors if anyone had read the article and none of the jurors responded affirmatively.  (App. at 585-86, 704,  ECF No. 23-12 at 87-88 & ECF No. 23-13 at 45.)  With regard to the solicitor's question referring to Pellum's post-arrest silence, the crux of this



question appears to be that the solicitor asked Pellum, "You have not told this story before today, have you, Mr. Pellum?"  (App. at 593, ECF No. 23-12 at 95.)  While trial counsel admitted the question was objectionable, he stated that he did not object to the question because he did not want to "call more attention to it."  (Id.)  He further testified that the solicitor asked a single question and that it was not mentioned again in the trial or during closing arguments.

In support of these assertions, Pellum testified that he did not consent to the recess, and that based on his research, the Judicial Merit Selection Commission Report indicated that the trial judge did not attend a judicial CLE on that Thursday.  Further, he stated that he was prejudiced by the newspaper article.

After summarizing the PCR testimony, the PCR court made the following additional pertinent findings in rejecting Pellum's allegations of ineffective assistance of counsel that are at issue in this claim:

> This Court finds that counsel is a trial practitioner who has extensive experience in the trial of serious offenses.  Counsel conferred with the Applicant on numerous occasions.  During conferences with the Applicant, counsel discussed the pending charges, the elements of the charges and what the State was required to prove, Applicant's constitutional rights, Applicant's version of the facts, and possible defenses or lack thereof.
>
> Regarding the Applicant's claims of ineffective assistance of counsel, this Court finds the Applicant has failed to meet his burden of proof.  This Court finds that Applicant's attorney demonstrated the normal degree of skill, knowledge, professional judgment, and representation that are expected of an attorney who practices criminal law in South Carolina.  State v. Pendergrass, 270 S.C. 1, 239 S.E.2d 750 (1977); Strickland, 466 U.S. at 668; Butler, 286 S.C. 441, 334 S.E.2d 813.  This Court further finds counsel adequately conferred with the Applicant, conducted a proper investigation, reviewed the discovery material, and was thoroughly competent in his representation.  This Court finds that counsel's representation did not fall below an objective standard of reasonableness.
>
> This Court finds that counsel was not ineffective for failing to object to the one-day recess in the trial when Judge Buckner had to attend a JCLE lecture. Although a newspaper article about the case was printed on the last day of the trial,



the jury was questioned about the article and each juror denied reading the article. Since no jurors read the article and the incident occurred in Colleton County, there was no basis to challenge the venue. This Court finds that Applicant was not prejudiced by counsel's failure to object to the recess or the venue.

. . . .

This Court finds that counsel was not ineffective for failing to object to the solicitor's question to Applicant about telling this story for the first time at trial. The solicitor asked a single question, and he did not mention Applicant's post-arrest silence in his closing argument. In Doyle v. Ohio, 426 US. 610, 96 S.Ct. 2240 (1976), the United States Supreme Court held that the State may not use an exercise of the right to silence as evidence of guilt at trial. However, in Brown v. State, 375 S.C. 464, 652 S.E.2d 765 (S.C. Ct. App. 2007), the South Carolina Court of Appeals held that there was no Doyle violation when the solicitor referred to the fact that the defendant did not give a statement to the police. The Brown court also held that the use of post-arrest silence for impeachment was allowed when no Miranda warnings were given. Brown, 375 S.C. 464, 652 S.E.2d 765. Here, there is no indication that Applicant received Miranda warnings. He was not read Miranda warnings before his statements to Nurse Tuten, and Nurse Tuten was not an agent of law enforcement or the State. Deputy Freeman testified that he "read [Applicant] his rights," but Deputy Freeman did not take a statement from Applicant and there is no indication that Applicant exercised his Miranda rights. This Court finds that Deputy Freeman was not interrogating Applicant when he read him his rights. Nonetheless, this Court finds that the solicitor's question was a single reference, and the comment was harmless to Applicant.

. . . Here, trial counsel testified that he did not object to the solicitor's question because be did not want to bring attention to the fact that Applicant had never told this story before trial. This Court finds that counsel has articulated a reasonable trial strategy for failing to object. This Court finds that counsel was not ineffective for failing to object to the solicitor's comment.

. . . .

Accordingly, this Court finds the Applicant has failed to prove the first prong of the Strickland test specifically that counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that counsel committed either errors or omissions in his representation of the Applicant. The Applicant failed to show that counsel's performance was deficient. This Court also finds the Applicant has failed to prove the second prong of Strickland, specifically that he was prejudiced by counsel's performance. This Court concludes that Applicant has not met his burden of proving counsel failed to render reasonably effective assistance. See Frasier v. State, 351 S.C. 385, 389, 570 S.E.2d 172, 174 (2002).

(App. at 751-53, 756, ECF No. 23-13 at 92-94, 97.)  With regard to Pellum's additional allegations of ineffective assistance of trial counsel—primarily alleging that trial counsel should have made specific objections—the PCR court found trial counsel articulated a reasonable trial strategy for these actions, they were without merit, and/or there was no prejudice to Pellum.

### c.    Conclusion

Upon thorough review of the parties' briefs and the record in this matter, the court finds that Pellum cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided by the Supreme Court in rejecting his claims or that the PCR court made objectively unreasonable factual findings.  See Williams, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1).  In response the respondent's motion for summary judgment, Pellum essentially reiterates his testimony presented to the PCR court and appears to argue that the PCR court should have credited his testimony over trial counsel's testimony.  However, Pellum has not clearly shown that the PCR court's credibility determinations were without support.  See Elmore v. Ozmint, 661 F.3d 783, 850 (4th Cir. 2011) ("We must be 'especially' deferential to the state PCR court's findings on witness credibility, and we will not overturn the court's credibility judgments unless its error is 'stark and clear.' ") (quoting Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010) and Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008)).

As observed by the Harrington court, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard."  Harrington, 131 S. Ct. at 785. Pellum has failed to demonstrate that the PCR court unreasonable misapplied federal law in rejecting each of Pellum's allegations of trial counsel's deficient conduct, much less that trial counsel entirely



failed to subject the prosecution's case to a meaningful adversarial testing entitling him to the presumption of prejudice under Cronic. See Cronic, 466 U.S. at 659; see, e.g., Salinas v. Texas, 133 S.Ct. 2174 (2013) (holding that when the defendant voluntarily responded to some of law enforcement's questions about a murder but remained silent in response to another question prior to the defendant being placed in custody or read his Miranda rights, the prosecution's use of the defendant's silence as evidence of his guilt at trial did not violate the Fifth Amendment because the defendant failed to expressly invoke his right not to incriminate himself in response to the officer's question); United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004) ("Under the first prong of Strickland, we apply a 'strong presumption' that a trial counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.' ") (quoting Strickland, 466 U.S. at 689). Additionally, for all of the reasons discussed by the PCR court, Pellum has failed to establish both that his trial counsel labored under an actual conflict of interest and that the conflict adversely affected his counsel's performance. See Mickens, 240 F.3d at 355; see also Stephens, 570 F.3d at 209. Therefore, Pellum has not shown that the PCR court's analysis of this issue misapplied clearly established federal law or, even if there was an error, that it was unreasonable.[8] See Williams, 529 U.S. at 410; see also Harrington, 131 S. Ct. at 785.

---

[8] To the extent that Pellum's response to summary judgment seeks an evidentiary hearing to submit new evidence to support his Petition, the court observes that its review for habeas corpus purposes is generally limited to the evidence that was placed before the state court. See Cullen v. Pinholster, 131 S. Ct. 1388, 1398, 1400 n.7 (2011); see also 28 U.S.C. § 2254(d)(2). Pellum has not established that any exception to this general rule applies here. See Cullen, 131 S. Ct. at 1400-01; see also 28 U.S.C. § 2254(e)(2).



## RECOMMENDATION

For the foregoing reasons, the court recommends that the respondent's motion for summary

judgment (ECF No. 22) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

August 5, 2013
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"   Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).